[Cite as *State v. Howell*, 2018-Ohio-591.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-170158 |
| | | TRIAL NO. C-14TRC-38185A |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| LAKISHA HOWELL, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  February 16, 2018


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Alex Scott Havlin*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Carrie Wood*, Assistant Public Defender, for Defendant-Appellant.

**MYERS, Presiding Judge.**

{¶1}    Defendant-appellant Lakisha Howell has appealed from the trial court's entry convicting her upon a no-contest plea to operating a vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a).

{¶2}    In two assignments of error, Howell argues that the trial court erred in denying her motion to suppress based on both the alleged unlawful stop of her automobile and the alleged unlawful administration of field-sobriety tests.    Because the stop of Howell's vehicle was not supported by probable cause or reasonable suspicion, we hold that the trial court erred in failing to grant her motion to suppress.

### *Factual and Procedural Background*

{¶3}    On August 6, 2014, Ohio State Highway Patrol Trooper Aaron Shade conducted a traffic stop of a vehicle driven by Howell.  Following the stop, Howell was cited for failure to dim headlights in violation of R.C. 4513.15 and placed under arrest for operating a vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a) and 4511.19(A)(1)(d).

{¶4}    Howell filed a motion to suppress challenging the traffic stop, the administration of field-sobriety tests, and her arrest.  At a hearing on the motion, Trooper Shade testified that he had been patrolling westbound on Interstate 275 at approximately 2:30 a.m., when Howell's vehicle approached him from behind. Howell had her high beams on as she approached, but dimmed them when she got close to the trooper's vehicle.  Trooper Shade observed Howell "bouncing" a little back and forth in her lane while she was behind him.  He testified that she had not

committed a lane violation and had not been driving erratically. He explained that the bouncing did not constitute a marked-lanes violation, but it had raised his suspicion because it was "abnormal." Trooper Shade slowed down to allow Howell to pass him, but she continued to stay behind his vehicle. As Howell exited from the interstate, Trooper Shade moved behind her and followed her for a short distance. She did not commit any traffic violations during this time. Trooper Shade testified that the sole reason he stopped Howell was because she had committed a traffic violation by failing to dim her headlights on the interstate.

{¶5} Upon approaching Howell's vehicle, Trooper Shade detected an odor of alcohol coming from within the vehicle, and he asked Howell if she had had anything to drink. Howell stated that she had drunk one margarita. Trooper Shade removed her from the vehicle and administered three field-sobriety tests. Based on Howell's performance on the field-sobriety tests, the odor of alcohol that he had detected from within Howell's vehicle, Howell's failure to dim her headlights, and the bouncing within her lane on the interstate, Trooper Shade placed Howell under arrest.

{¶6} The trial court denied Howell's motion to suppress, finding that the initial traffic stop had been legal and based upon probable cause. It further found that the field-sobriety tests had been properly administered. As relevant to the traffic stop of Howell's vehicle, the trial court found as a fact that Howell had operated her motor vehicle behind Trooper Shade on Interstate 275 with her high beams illuminated, and that Trooper Shade had stopped Howell's vehicle based on her failure to dim her headlights. The court specifically found that the stop had been a noninvestigatory stop. The trial court denied Howell's motion to suppress upon its

conclusion that Trooper Shade had probable cause to conduct a noninvestigatory stop of Howell's vehicle based on her failure to dim her headlights.

{¶7} Howell subsequently pled no contest to a violation of R.C. 4511.19(A)(1)(a) and was found guilty. She appealed, but her appeal was dismissed by this court because the trial court had not imposed a sentence, and therefore, the order appealed from was not final and appealable.

{¶8} After her appeal was dismissed, the trial court sentenced Howell. She now appeals from the trial court's final entry finding her guilty and imposing sentence. In two assignments of error, she challenges the trial court's denial of her motion to suppress.

### Standard of Review

{¶9} Our review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. We must accept the trial court's findings of fact if they are supported by competent and credible evidence, but we review de novo the trial court's application of the relevant law to those facts. *Id.*

### Automobile Stop

{¶10} In her first assignment of error, Howell argues that the trial court erred in denying her motion to suppress the stop of her automobile and all evidence gathered following the unlawful stop.

{¶11} Because a traffic stop constitutes a seizure within the meaning of the Fourth Amendment to the United States Constitution, the traffic stop must comply with the Fourth Amendment's reasonableness requirement. *State v. Slaughter*, 1st

Dist. Hamilton Nos. C-170110, C-170111 and C-170112, 2018-Ohio-105, ¶ 10, citing *Whren v. United States*, 517 U.S. 806, 809-810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). When an officer witnesses a specific violation of the traffic code, a stop of the vehicle in which the violation is committed is supported by probable cause. *State v. Johnson*, 1st Dist. Hamilton Nos. C-010621 and C-010622, 2002-Ohio-2884, ¶ 7.

{¶12} In addition, even in the absence of probable cause, an officer may initiate a traffic stop when the officer has a reasonable articulable suspicion that a crime has been, or is being, committed. *State v. Foster*, 1st Dist. Hamilton No. C-160424, 2017-Ohio-4036, ¶ 16, citing *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7. An investigatory traffic stop is permitted in such a situation in order for the officer to confirm or refute her or his suspicion. *Johnson* at ¶ 6. The totality of the circumstances must be examined to determine whether an officer had a reasonable articulable suspicion to initiate a traffic stop. *Slaughter* at ¶ 12.

{¶13} Here, the officer testified, and the court found, that his stop was based on probable cause for the failure to dim, and not an investigatory stop for another violation such as driving under the influence. Trooper Shade testified that he had stopped Howell because she had committed a violation of R.C. 4513.15(A)(1) by failing to dim her headlights as she approached him from behind on the interstate. R.C. 4513.15(A)(1) provides that:

> (A) Whenever a motor vehicle is being operated on a roadway or shoulder adjacent thereto during the times specified in section 4513.03 of the Revised Code, the driver shall use a distribution of light, or composite beam, directed high enough and of sufficient intensity to

reveal persons, vehicles, and substantial objects at a safe distance in advance of the vehicle, subject to the following requirements;

(1) Whenever the driver of a vehicle approaches an oncoming vehicle, such driver shall use a distribution of light, or composite beam, so aimed that the glaring rays are not projected into the eyes of the oncoming driver.

{¶14} Howell argues that she could not have violated R.C. 4513.15(A)(1), because she had been driving in the same direction as Trooper Shade and had not projected her high beams into the eyes of an oncoming driver. She is correct. The plain language of the statute provides that a driver must use a distribution of light that does not project glaring rays when she or he "approaches an oncoming vehicle." In this context, the term "oncoming" unambiguously refers to a vehicle approaching from the opposite direction. Trooper Shade testified that he had been traveling in the same direction as Howell. And the record is devoid of evidence that there was any oncoming traffic at the time that Howell was using her high beams. Consequently, Trooper Shade was mistaken in his determination that Howell had committed a violation of R.C. 4513.15.

{¶15} But "[p]robable cause can exist even if the officer incorrectly determines that a traffic violation has occurred or if the officer misunderstands the law that the driver is allegedly violating. The test is whether an objectively reasonable police officer would believe that a traffic violation has occurred based upon the totality of the circumstances." *State v. Cronin*, 1st Dist. Hamilton No. C-100266, 2011-Ohio-1479, ¶ 11. Given the plain language of the statute regulating the distribution of light to be used when "the driver of a vehicle approaches an oncoming

vehicle," we cannot find that an objectively reasonable police officer would have believed that a violation of R.C. 4513.15 had occurred in this situation. Trooper Shade's mistake of law was not reasonable. Consequently, we hold that Trooper Shade did not have probable cause to stop Howell's vehicle for a violation of R.C. 4513.15.

{¶16} The state argues that even if Trooper Shade lacked probable cause to stop Howell for the headlight violation, he still had a reasonable suspicion under the totality of the circumstances to conduct an investigatory stop to determine if Howell was engaged in criminal activity. The state cites to Trooper Shade's testimony that the traffic stop occurred at 2:30 a.m., that Howell had initially failed to dim her headlights upon coming up behind the trooper's vehicle, that Howell had bounced within her lane, and that she had refused to pass the trooper when he slowed his speed. We find this testimony insufficient to establish a reasonable suspicion that Howell had been engaged in criminal activity. *See Cincinnati v. Stringer*, 1st Dist. Hamilton Nos. C-070392 and C-070393, 2008-Ohio-2056, ¶ 10. While the record indicates that Howell committed minimal weaving within her lane, it is void of evidence that she had been driving erratically. *State v. Luckett*, 1st Dist. Hamilton Nos. C-070359, C-070360 and C-070361, 2008-Ohio-1441, ¶ 15 (holding that weaving within one's own lane must be significant or erratic to justify a traffic stop, and that "[m]odest weaving within one's lane, without more, is insufficient"); *State v. Brown*, 11th Dist. Trumbull No. 2006-T-0077, 2007-Ohio-4626, ¶ 15 (holding that modest or minimal weaving within one's lane is insufficient to justify an investigative stop for a violation of R.C. 4511.33(A)(1)). We further note that the trial court specifically found that Trooper Shade had not been conducting an investigatory stop.

And the record contains no evidence that Trooper Shade suspected impaired driving prior to pulling Howell over.

{¶17} Because Trooper Shade lacked both probable cause to stop Howell for a violation of R.C. 4513.15, and a reasonable suspicion that she had been engaged in criminal activity, we hold that the trial court erred in failing to grant her motion to suppress. The first assignment of error is sustained. And we do not reach Howell's second assignment of error challenging the trial court's failure to suppress the unlawful administration of field-sobriety tests, because it is rendered moot by our resolution of the first assignment of error.

{¶18} The trial court's judgment denying Howell's motion to suppress is reversed, and this cause is remanded for further proceedings consistent with the law and this opinion.

Judgment reversed and cause remanded.

DETERS, J., concurs.
MILLER, J., dissents.

MILLER, J., dissenting.

{¶19} The trooper testified he initiated a traffic stop because of his mistake of law regarding the use of bright headlights. But the trooper's subjective mistake of that law is not dispositive of whether the stop was reasonable. "An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, as long as the circumstances, viewed *objectively*, justify the action." (Citations omitted.) *Brigham City, Utah v. Stuart*, 547 U.S. 398, 404, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006); *Dayton v. Erickson*, 76 Ohio St.3d 3, 665 N.E.2d 1091 (1996) (if the traffic stop is objectively reasonable, the officer's subjective motive for

making the stop is irrelevant); *State v. Salvato*, 1st Dist. Hamilton No. C-980939, 1999 WL 636557 (Aug. 13, 1999) ("Whether probable cause to search existed depends on the objective factors articulated by the officer. If the search is objectively reasonable, the officer's stated reason or motive for the search is irrelevant."). Thus our focus should be whether the stop was reasonable under the totality of the circumstances.

{¶20} The trooper also testified that the use of the high beams and the vehicle's bouncing within the marked lane "just raised suspicion." He also testified that he viewed her failure to pass him when he slowed to 55 m.p.h. as unusual. Once the trooper did get behind the vehicle, he "continued to follow her just to see if there were any other signs." He indicated these facts were part of the justification for asking the driver to perform a field-sobriety test, and for arresting her. The facts articulated by the trooper, in my mind, demonstrate that he subjectively possessed a reasonable articulable suspicion of impaired driving when he initiated the stop. And regardless of the trooper's thoughts, these facts objectively justify the stop, which is all the Fourth Amendment requires. Accordingly, I respectfully dissent.


Please note:
    The court has recorded its own entry on the date of the release of this opinion.