[Cite as *State v. Grayson*, 2023-Ohio-4275.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230083 |
|  |  | TRIAL NO. B-2105812 |
| Plaintiff-Appellee, | : |  |
|  | : |  |
| vs. | : | *O P I N I O N.* |
|  | : |  |
| JACOB GRAYSON, | : |  |
|  |  |  |
| Defendant-Appellant. | : |  |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: November 29, 2023

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Sean M. Donovan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Bryan R. Perkins*, for Defendant-Appellant.

**BERGERON, Judge.**

{¶1}   During a traffic stop prompted by tinted windows and an unilluminated headlight, police discovered an outstanding traffic capias for the car's passenger, defendant-appellant Jacob Grayson.  An ensuing search of Mr. Grayson's wallet revealed suspected drugs, which translated into an indictment and a later conviction for possession of a fentanyl-related compound in violation of R.C. 2925.11(A).  Mr. Grayson moved to suppress the evidence against him, arguing the search ran afoul of his constitutional rights.  The trial court, however, disagreed and denied his motion to suppress.  He now appeals, challenging the failure to suppress the evidence.  After reviewing the record, however, we reject his argument and affirm the trial court's judgment.

I.

{¶2}   In November 2021, as Delhi Township Police Officer Michael Gerde observed traffic on Delhi Pike from a stationary position, he noticed a vehicle driving with only one headlight illuminated and darkly-tinted windows.  Suspicious, Officer Gerde ran the license plate number, and it returned multiple people attached to the vehicle—one of whom had an open traffic capias out of Addyston Mayor's Court.

{¶3}   Based on all of that information, he initiated a traffic stop and discovered Mr. Grayson in the front passenger seat of the vehicle.  Officer Gerde asked both the driver and Mr. Grayson for identification, and then he proceeded to his cruiser where he ran the identification, uncovering Mr. Grayson's open traffic capias.  At that time, Officer Gerde did not know of the specific violation prompting the capias—only that it was traffic related.

**{¶4}** Officer Gerde removed Mr. Grayson from the vehicle and patted him down, removing a pack of cigarettes and his wallet. He advised Mr. Grayson of the capias and informed him that he planned to call Addyston Police Department to determine how to proceed. Testimony at trial established that it was Delhi police policy to arrest any individual with an outstanding warrant. Officer Gerde placed Mr. Grayson in the back of the police cruiser without handcuffing him. He then searched the wallet and found a small paper bindle containing suspected drugs, later identified as a fentanyl-related compound.

**{¶5}** After finding the suspected drugs, Officer Gerde handcuffed Mr. Grayson, placed him under arrest, and read him his *Miranda* warnings. He then contacted the Addyston Police Department and confirmed the capias. He also tested the window tint, establishing its illegality. Mr. Grayson was escorted to the Hamilton County Justice Center.

**{¶6}** The Hamilton County Grand Jury returned a one-count indictment against Mr. Grayson, charging him with possession of a fentanyl-related compound—a felony of the fourth degree—pursuant to R.C. 2925.11(A). Mr. Grayson requested the trial court suppress the evidence discovered, arguing that the police seized the evidence without a search warrant or consent and outside the scope of the search incident to arrest exception because the Addyston traffic capias was illegally premised on an unpaid fine. After a hearing, the trial court denied the motion to suppress. Mr. Grayson subsequently pleaded no contest, and the trial court found him guilty. Ultimately, the court sentenced him to two years of community control. Mr. Grayson now appeals.

II.

**{¶7}** In his sole assignment of error, Mr. Grayson maintains that the trial court erred by denying his motion to suppress. To advance his argument, Mr. Grayson presents two issues for our review: his detention and the subsequent search violated the Fourth Amendment, and the warrant was unlawfully issued by the Addyston Mayor's Court, precluding the application of the good faith exception. We proceed to address each of his arguments in turn.

A.

**{¶8}** In his first issue presented for review, Mr. Grayson generally attacks the denial of his suppression motion. This court's review of a ruling on a motion to suppress "presents a mixed question of law and fact." *State v. Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, 96 N.E.3d 262, ¶ 14, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. We "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). " 'But we must independently determine whether the facts satisfy the applicable legal standard.' " *State v. Thompson*, 1st Dist. Hamilton No. C-200388, 2021-Ohio-3184, ¶ 10, quoting *State v. Taylor*, 174 Ohio App.3d 477, 2007-Ohio-7066, 882 N.E.2d 945, ¶ 11 (1st Dist.).

**{¶9}** Because traffic stops constitute seizures within the meaning of the Fourth Amendment, they "must comply with the Fourth Amendment's reasonableness requirement." *State v. Slaughter*, 1st Dist. Hamilton Nos. C-170110, C-170111 and C-170112, 2018-Ohio-105, ¶ 10, citing *Whren v. United States*, 517 U.S. 806, 809-810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). "When an officer witnesses a specific violation of the traffic code, a stop of the vehicle in which the violation is committed is supported

by probable cause." *State v. Howell*, 2018-Ohio-591, 106 N.E.3d 337, ¶ 11 (1st Dist.), citing *State v. Johnson*, 1st Dist. Hamilton Nos. C-010621 and C-010622, 2002-Ohio-2884, ¶ 7.

{¶10} Here, Mr. Grayson does not contest the initial traffic stop or the trial court's finding that Officer Gerde witnessed a traffic violation in light of the vehicle's one functioning headlight and tinted windows. Instead, he argues that the officer requested Mr. Grayson's identification without reasonable suspicion that he had committed a crime. But "a police officer may request identifying information from a passenger in a vehicle stopped for a traffic violation without particularized suspicion that the passenger poses a safety risk or is violating the law." *State v. Emmons*, 1st Dist. Hamilton No. C-150636, 2016-Ohio-5384, ¶ 15, citing *United States v. Alexander*, 467 Fed.Appx. 355, 362 (6th Cir.2012). Unlike drivers, however, passengers are "not legally obligated to carry identification or to produce it for a police officer." *State v. Debrossard*, 4th Dist. Ross No. 13CA3395, 2015-Ohio-1054, ¶ 14. Nevertheless, Mr. Grayson willingly complied with Officer Gerde's request for his identification, and we see nothing in the record to suggest that his compliance was not voluntary.

{¶11} Mr. Grayson also contends that Officer Gerde unreasonably extended the stop by diverting attention away from the initial reason for the stop and taking the time to run his identification. In this regard, he points to several cases generally indicating the taking of identification constitutes a critical factor in determining if a seizure occurred. *See, e.g.*, *State v. Westover*, 2014-Ohio-1959, 10 N.E.3d 211 (10th Dist.); *State v. Jones*, 188 Ohio App.3d 628, 2010-Ohio-2854, 936 N.E.2d 529 (10th Dist.); *State v. Bermundez*, 8th Dist. Cuyahoga No. 88243, 2007-Ohio-2115. But those

cases did not involve traffic stops. And "[f]or the duration of a traffic stop, * * * a police officer effectively seizes 'everyone in the vehicle,' the driver and all passengers." *Arizona v. Johnson*, 555 U.S. 323, 327, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009), quoting *Brendlin v. California*, 551 U.S. 249, 255, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007). Thus, the crucial inquiry is not whether a seizure occurred but rather whether the traffic stop was " 'prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." *State v. Jones*, 2022-Ohio-561, 185 N.E.3d 131, ¶ 22 (4th Dist.), quoting *Rodriguez v. United States*, 575 U.S. 348, 350, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015).

**{¶12}** Generally, during a traffic stop, "a request for identification from a passenger, followed by a computer check of that information, does not constitute an unreasonable search and seizure, so long as the traffic stop is not extended in duration beyond the time reasonably necessary to effectuate its purpose." *State v. Matheny*, 5th Dist. Licking No. 21CA0088, 2022-Ohio-3447, ¶ 37, citing *State v. Morgan*, 2d Dist. Montgomery No. 18985, 2002-Ohio-268. There is no evidence suggesting that Mr. Grayson's detention while Officer Gerde ran the two identifications inappropriately extended the length of time beyond that required to issue a traffic citation. Within the first minute of the stop, Officer Gerde approached the car and asked the driver for his identification, proof of insurance, and registration. Approximately 30 seconds later, he requested Mr. Grayson's identification for verification. And about three and a half minutes into the stop, he completed those tasks, approached the passenger door, and ordered Mr. Grayson out of the car.

**{¶13}** Additionally, Mr. Grayson argues that the search of his wallet was not justified as a search incident to arrest. Generally, "warrantless searches are per se

6

unreasonable." *State v. Bacher*, 170 Ohio App.3d 457, 2007-Ohio-727, 867 N.E.2d 864, ¶ 8 (1st Dist.). But there are "a few well-established exceptions" to the warrant requirement. *State v. Ulmer*, 1st Dist. Hamilton Nos. C-190304, C-190305 and C-190306, 2020-Ohio-4689, ¶ 13, citing *State v. Ward*, 2017-Ohio-8141, 98 N.E.3d 1257, ¶ 13 (1st Dist.).

{¶14} One exception to the warrant requirement is the search incident to a lawful arrest. Upon a person's lawful arrest, an officer may conduct "a full search of the arrestee's person" and the "search is not limited to the discovery of weapons." *State v. Haynes*, 1st Dist. Hamilton No. C-140205, 2015-Ohio-3432, ¶ 25, citing *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). Because at the time of the search, Officer Gerde admitted that he was unsure if he would proceed by arresting or reciting Mr. Grayson on the outstanding warrant, Mr. Grayson seizes on this uncertainty to challenge the validity of the search. But a search incident to arrest may precede the formal arrest "so long as probable cause for arrest existed at the time of the search and the search was contemporaneous with the arrest." *State v. Reed*, 1st Dist. Hamilton No. C-200104, 2022-Ohio-3986, ¶ 22, citing *State v. Gilmore*, 1st Dist. Hamilton Nos. C-070521 and C-070522, 2008-Ohio-3475, ¶ 14. Here, the outstanding warrant provided a basis for the arrest, so even assuming Mr. Grayson was not arrested until after the challenged search, probable cause for the arrest existed prior to the search. Therefore, the search constituted a valid search incident to arrest.

{¶15} Finally, Mr. Grayson contests the search as exceeding the scope of a *Terry* search. Because the search was justified by the search incident to arrest

exception to the warrant requirement, however, the officer was allowed to conduct a full search, obviating our need to consider *Terry*.

B.

**{¶16}** In his second issue presented for review, Mr. Grayson argues that the trial court erred by applying the good faith exception to the exclusionary rule because the Addyston Mayor's Court unlawfully issued the arrest warrant.

**{¶17}** In attacking the arrest warrant, Mr. Grayson—citing *Bearden v. Georgia*, 461 U.S. 660, 664-665, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983)—contends that under constitutional due process and equal protection principles, a court cannot automatically convert a fine into a jail sentence based solely on the lack of payment. For further support, he points to R.C. 2947.14(A), which provides that "[i]f a fine is imposed as a sentence * * * the offender [may] be committed to the jail or workhouse until the fine is paid * * * if the court or magistrate determines at a hearing that the offender is able, at that time, to pay the fine but refuses to do so." Following the required hearing, if the court determines the offender can pay a fine but refuses, "a warrant may be issued for the arrest of the offender." R.C. 2947.14(C). In essence, he posits that the warrant trespassed on statutory and constitutional grounds because it sought to jail him for nonpayment of a traffic fine.

**{¶18}** While we share Mr. Grayson's concern regarding the process by which the Addyston Mayor's Court issued the traffic capias (tellingly, the state does not defend it), that does not end the inquiry. Rather, the state contends that the good faith exception to the exclusionary rule applies, insulating the search at hand from constitutional concern.

**{¶19}** In an effort to deter police misconduct, the United States Supreme Court created the exclusionary rule as a "remedy for Fourth Amendment violations." *State v. Martin*, 2021-Ohio-2599, 175 N.E.3d 1004, ¶ 26 (1st Dist.), citing *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, ¶ 92. "[W]hen police act in an objectively reasonable manner in executing a search believed in good faith to be legal, there is no bad conduct to deter." *State v. Dibble*, 159 Ohio St.3d 322, 325-326, 2020-Ohio-546, 150 N.E.3d 912, citing *United States v. Leon*, 468 U.S. 897, 918-920, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

**{¶20}** The good faith exception generally applies in circumstances "where an officer relies, in an objectively reasonable manner, on a mistake made by someone other than the officer." *State v. Dickman*, 2015-Ohio-1915, 34 N.E.3d 488, ¶ 26 (10th Dist.). But suppression may be an appropriate remedy if the " 'issuing magistrate wholly abandoned their judicial role by taking on the role of law enforcement.' " *State v. Hoffman*, 141 Ohio St.3d 428, 2014-Ohio-4795, 25 N.E.3d 993, ¶ 32, quoting *Leon* at 923. Situations in which courts have applied the good faith exception include where a database erroneously informed police they had a warrant, *Arizona v. Evans*, 514 U.S. 1, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995), and where a probate judge issued a warrant without the legal authority to issue warrants on criminal manners, *State v. Brown*, 142 Ohio St.3d 92, 2015-Ohio-486, 28 N.E.3d 81.

**{¶21}** Here, while Mr. Grayson's allegation that the magistrate failed to conduct the legally-required investigation into Mr. Grayson's ability to pay the fine issued, *see* R.C. 2947.14(A), is very worrisome, the record does not establish that the investigation never occurred. And regardless, he does not allege (nor do we see evidence in the record) that the magistrate abandoned their detached and neutral role.

9

Therefore, on the record at hand, even assuming the deficiency of the warrant, Officer Gerde acted reasonably in relying upon the warrant because there is nothing in the record suggesting he had reason to know of any legal deficiencies of the warrant. The trial court concluded, correctly in our view: "There is not police misconduct to deter. Officer Gerde took steps to verify the warrant by placing a call [to] the Addyston police department. Officer Gerde acted in good faith that the information provided to him was correct and acted appropriately." The trial court made these factual findings about the actions of Officer Gerde, and this court "must accept [these facts] as true if they are supported by competent, credible evidence." *Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶ 8.

*     *     *

{¶22} In light of the foregoing analysis, we overrule Mr. Grayson's sole assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**CROUSE, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.